# EXHIBIT A



ABRAMS INSTITUTE FOR FREEDOM OF EXPRESSION
# Yale Law School

*Via FBI eFOIA Request Portal*

September 17, 2021

Federal Bureau of Investigation
Attn: Initial Processing Operations Unit
200 Constitution Drive
Winchester, VA 22602

Re:  <u>Freedom of Information Act Request</u>

To Whom It May Concern:

This is a request for disclosure of documents under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Department of Justice ("DOJ") FOIA regulations, 28 C.F.R. § 16.1 *et seq.*, submitted on behalf of The New York Times Company, publisher of *The New York Times*, Lee Levine, and Stephen Wermiel. Mr. Levine and Mr. Wermiel are noted legal historians who are currently writing a book tracing the history of the reporter's privilege in the United States. These requesters seek FBI records reflecting any monitoring, surveillance, or counterintelligence activities aimed at *The New York Times* or any of its reporters as part of the Counterintelligence Program ("COINTELPRO"), which sought "to expose, disrupt misdirect, discredit or otherwise neutralize the activities of black nationalist, hate type organizations"[1] during the late 1960s and early 1970s.

This is also a request for a reduction or waiver of fees under 28 C.F.R. § 16.10(k).

**<u>Background</u>**

The FBI's COINTELPRO began in the 1950s as an effort to disrupt the Communist Party of the United States but, in the 1960s, was expanded to include other domestic groups, including the Black Panther Party. The FBI abandoned the program in the 1970s, and it later became the subject of congressional scrutiny, including during the 1975 Church Committee investigation into abuses by the FBI and other intelligence agencies. Congress was highly critical of COINTELPRO for abridging the First Amendment rights of the American people.

While the program was in effect, the FBI tried to press at least one *New York Times* reporter, Earl Caldwell, into becoming an informant. The agency sought from him information about the Black Panther Party, which he was then reporting on as a journalist for *The Times*. Caldwell later refused to disclose information he had learned about the Black Panthers when

---

[1] Memorandum from SAC, Albany to Director, FBI, dated August 25, 1967.

subpoenaed by the Department of Justice to do so before a federal grand jury. The government's effort to compel testimony from Caldwell reached the Supreme Court in 1972, and the Court's ruling in *Branzburg v. Hayes*, 408 U.S. 665 (1972), to this day remains its only decision addressing the existence of a First Amendment privilege protecting the confidentiality of a reporter's sources. Caldwell's loss in the Court led directly to the enactment of shield laws protecting reporter-source communications by many states.

A great deal of information about the FBI's targeting of so-called "black nationalist" groups was made public by the Church Committee, including information about FBI efforts to disrupt the ability of such groups to secure favorable publicity. But little information has been made public about any targeting of news organizations or journalists during this period as part of those efforts to affect the publicity given to black nationalist and other groups.

This request seeks records that will shed important new light on the FBI's actions during this period and contribute to public understanding of laws and regulations that may be needed to adequately protect the ability of reporters to gather news about disfavored social, religious, and political organizations.

**Documents Requested**

For the period July 1, 1968, to July 1, 1972, please produce for inspection and copying:
1. All records relating to COINTELPRO that reference *The New York Times*, either by its full name or in abbreviated form, like NY Times or NYT;
2. All records that reference *The New York Times*'s reporting on the Black Panther Party or any of its members;
3. All records relating to any effort by the FBI to influence *The New York Times*'s reporting on the Black Panther Party or any of its members; and
4. All records reflecting communications between the FBI and the Department of Justice relating to the issuance of subpoenas to *The New York Times* or any of its reporters.

**Application for Waiver or Limitation of Fees**

We also request that the FBI waive and/or limit the search, review, and duplication fees associated with this request. 28 C.F.R. § 16.10(k) states that the Bureau will waive or reduce fees if disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government," and the request is not "primarily in the commercial interest of the requester." 28 C.F.R. § 16.10(k)(2). Both factors warrant a fee waiver in this instance.

First, the requested records indisputably "concern identifiable operations or activities of the Federal Government," 28 C.F.R. §16.10(k)(2)(i), and disclosure of these records is "likely to contribute significantly to public understanding of those operations or activities," 28 C.F.R. §16.10(k)(2)(ii). The events underlying this request led directly to *Branzburg v. Hayes*, 408 U.S. 665 (1972), the key Supreme Court precedent concerning the reporter's privilege, and to the

adoption of shield laws in many states.  Disclosure of these records is likely to yield new information about the actions of the FBI that precipitated these important developments in press protection and facilitate public understanding and meaningful discussion of the proper role of the FBI in its interaction with the press, an issue that has taken on vital new importance today.

Second, disclosure is not primarily in the commercial interest of the requesters.  28 C.F.R. § 16.10(k)(2).  The records are not sought for commercial use and will be disclosed to the public.  Requesters do not seek these records to further any commercial, trade, or profit interest, but for journalistic use by both *The New York Times* and two noted legal writers on press freedom.

The requestors are therefore entitled to a waiver of search fees and review fees, and a waiver or reduction of duplication fees.  If you require further information concerning the basis of this request for a fee waiver and/or limitation, please contact us at the email address listed below.

Should the FBI conclude that the requestors are not eligible for a waiver of all fees, we pre-authorize the expenditure of up to $100.00 to process this request.  Please contact us via email to obtain our authorization prior to charging any fees above that amount.

**Response Requested in 10 Days**

Your prompt attention to this request is appreciated, and we anticipate your response within ten (10) working days, pursuant to 28 C.F.R. § 16.5(a).

If this FOIA request is denied in whole or in part, we respectfully request that the FBI provide a reasonable description of any withheld materials, and a justification for the withholding of such materials, including a reference to the FOIA exemption (or other legal authority) supporting the withholding.  28 C.F.R. § 16.6(d)–(e).

Should you have any questions regarding this request, please contact me at your earliest convenience at the email address listed below.  If it will accelerate release of responsive records, please also provide responsive material on a rolling basis.  Also, if our request for a fee waiver is not granted in full, please contact me immediately upon making such a determination.

We look forward to working with you on this request.  Thank you for your assistance and prompt attention to this matter.

Sincerely,

David A. Schulz
Media Freedom & Information Access Clinic
Yale Law School
Tel: 917-733-9014
Email: david.schulz@yale.edu